UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                  )
WAYNE PERRYMAN, *et al.*,         )
                                  )    No. C17-0274RSL
                    Plaintiffs,   )
      v.                          )
                                  )    ORDER GRANTING MUNICIPAL
CITY OF SEATTLE POLICE, *et al.*, )    DEFENDANTS' MOTION TO
                                  )    DISMISS
                    Defendants.   )
_____)

This matter comes before the Court on "Defendants City of Seattle, Seattle Police Department's Motion to Dismiss Under Rule 12(b)(6) and 12(b)(1)." Dkt. # 9.[1] In the context of a motion to dismiss, the Court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). Nevertheless, Ninth Circuit authority allows the Court to consider documents attached to or referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations state a claim upon which relief can be granted under Fed. R.

---

[1] Plaintiffs have identified the "City of Seattle Police" as a defendant in this matter. Dkt. # 3-1 at 2. The Seattle Police Department is a department or agency of the City of Seattle. Any challenge to its actions, policies, or practices must be asserted against the municipality itself. Because the Police Department is not a legal entity capable of being sued, any claims against it are DISMISSED, and this matter shall proceed against the City of Seattle. Bradford v. City of Seattle, 557 F. Supp.2d 1189, 1207 (W.D. Wash. 2008); Nolan v. Snohomish County, 59 Wn. App. 876, 883 (1990).

ORDER GRANTING MUNICIPAL DEFENDANTS'
MOTION TO DISMISS

Civ. P. 12(b)(6). U.S. v. Ritchie, 342 F.3d 903, 908-09 (9th Cir. 2003). Because the documents attached to the complaint and the surveillance videos provided by the City fall within one or more of these categories, the allegations of the complaint and these records have been considered in ruling on the City's motion. The City has not, however, shown that the General Offense Report regarding the incident or the Declaration of Kathleen O'Toole are integral parts of plaintiff's complaint or are matters which can be judicially noticed for the truth of the matters stated therein. The Court declines to convert the City's motion into a motion for summary judgment and has therefore not considered the report or declaration.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits as set forth above,[2] the Court finds as follows:

## BACKGROUND

What follows is a recitation of plaintiffs' allegations modified as necessary to be consistent with the surveillance videos. Both the allegations and the videos are construed in favor of plaintiffs.

Plaintiffs' claims arise out of an incident occurring on April 4, 2015, outside the Rhino Room bar in the Capitol Hill neighborhood of Seattle. Plaintiff Sean Perryman (hereinafter,

---

[2] This matter can be decided on the papers submitted. The City's request for oral argument is therefore DENIED.

1  "Perryman"[3]) was out with two friends and was denied reentry into the Rhino Room by a
2  security guard. Perryman's friend, Matthew Taylor, "became uncontrollably angry," and
3  Perryman attempted to defuse the situation. Dkt. # 3-1 at 4. Taylor would not be dissuaded,
4  however. Even after Perryman physically removed him from the scene, Taylor returned and
5  began taking photos of the security guards with his phone. A security guard came up behind
6  Taylor and either grabbed his phone or shoved him. Perryman intervened, putting his shoulder
7  into the security guard's midriff and knocking him away from Taylor. The guard stumbled
8  backwards and Perryman ended up on the ground. As Perryman was getting up, a bystander,
9  Justin Ismael, shoved him. Perryman rushed Ismael, driving him into a metal railing: the two of
10 them locked and ended up in the street. At this point, Perryman is attacked by a number of
11 people who push him further out into the street. Plaintiffs allege that Perryman was thrown to the
12 ground, put into a choke hold, tased, and handcuffed. His lips were split open, and he chipped a
13 tooth. Ismael can be seen falling back onto the curb. When he attempts to get up, his leg will not
14 hold him.

15     Taylor, meanwhile, called 911 and reported that he had just been assaulted, that security
16 guards were on top of his friend, that Perryman's face was pinned to the ground, and that he was
17 spitting out blood. A patrol car pulled up shortly thereafter. The officer who emerges from the
18 passenger side door is met by an unidentified man and sees Ismael sitting on the ground with a
19 disfigured knee and Perryman lying handcuffed on the sidewalk. The officer and his partner
20 speak with Taylor, who reported that he was attacked by one of the security guards. An officer
21 spoke with Ismael, who identified Perryman as the person who injured his leg. Ismael told the
22 officer that he had gotten involved because Perryman had thrown Taylor to the ground. Other
23 witnesses at the scene are questioned and reported that Perryman was the one who attacked
24 Ismael. Plaintiffs allege that Taylor told the responding officers that he wanted to press charges

---

[3] The Reverend Wayne Perryman is also a plaintiff in this lawsuit, but was not on the scene.

against the security guard who attacked him and asked them to "watch the video." Dkt. # 3-1 at 7. The officers did not review the surveillance tapes or the videos taken by numerous bystanders before arresting Perryman and charging him with assault. The charge was dropped when additional evidence, presumably the surveillance videos, threw doubt on Ismael's version of events.

Plaintiff Sean Perryman and his father, the Reverend Wayne Perryman, filed this lawsuit pro se on January 24, 2017. It is not entirely clear what causes of action are being asserted against the City, but the gravamen of the complaint seems to be that Perryman's arrest was a reflection of racist police policies and practices which presume African Americans are guilty and that other races are not. Plaintiffs do not deny that Perryman fought with Ismael or that Ismael was injured. Rather, they allege that, had the police not been so quick to assume that the only African American at the scene must be the guilty one, they would have done a more thorough investigation and discovered that Ismael lied when he said that Perryman had attacked Taylor and that Ismael was the aggressor in the conflict. The Court will assume, for purposes of this motion, that plaintiffs are asserting that Perryman was falsely arrested and/or that his equal protection rights were violated.[4]

**A. FALSE ARREST AND/OR UNREASONABLE SEIZURE**

Under Washington law, "[a] false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person." Youker v. Douglas County, 162 Wn. App. 448, 465 (2011). Under federal law, the Fourth Amendment protects individuals against unreasonable seizure. Seizures are neither unlawful nor unreasonable if the arresting officer has probable cause to believe that the individual has committed a crime. Manuel v. City of Joliet, Ill., __ U.S. __, 137 S. Ct. 911, 917 (2017). Probable cause that will defeat a

---

[4] To the extent plaintiffs allege that Taylor was denied due process or suffered some other injury, they do not have standing to pursue relief on behalf of a third party.

ORDER GRANTING MUNICIPAL DEFENDANTS'
MOTION TO DISMISS                -4-

claim for false arrest or unreasonable seizure must be based on reasonably trustworthy information. Bishop v. City of Spokane, 142 Wn. App. 165, 170 (2007); Allen v. City of Portland, 73 F.3d 232, 237 (9th Cir. 1995). An officer may not rely solely on the claim of a witness that he or she was the victim of a crime "but must independently investigate the basis of the witness' knowledge or interview other witnesses." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001).

Plaintiff Sean Perryman was arrested for assaulting Ismael. The allegations of the complaint and the two surveillance videos reveal that the arresting officers did not simply rely on Ismael's account of what happened. They contacted a number of witnesses at the scene, all of whom stated that Perryman had injured Ismael. Even if all of the witnesses "deliberately and intentionally fabricated their story to have Sean arrested" (Dkt. # 3-1 at 6), there is no indication that the officers had any reason to doubt the version of events they heard from a number of individuals. Plaintiffs do not allege that Perryman or Taylor told the officers that Perryman was acting in self-defense or was otherwise not responsible – factually or legally – for Ismael's injury. In fact, for purposes of this motion, there is no indication that Perryman told the officers anything. Taylor, for his part, was allegedly focused on the security guard's attack on himself, indicating that he wished to bring charges against the guard. Whatever happened between Taylor and the security guard has no bearing, however, on whether the officers had probable cause to believe that Perryman had assaulted Ismael.[5]

Plaintiffs' false arrest and unreasonable seizure claims are based on the assertion that the officers ignored exculpatory evidence, namely the surveillance videos, when investigating the

---

[5] At various points in the complaint, plaintiffs make vague references to exculpatory statements Taylor and/or Perryman made to the officers without actually alleging any such statements. For example, plaintiffs allege that there "were two different versions regarding what took place on that night, (one from Matt and Sean) and the other from the security guards . . . ." Dkt. # 3-1 at 7. The only conversations that are recounted, however, involve Taylor's accusation that a security guard had attacked him.

melee in front of the Rhino Room. But the officers spoke with a number of witnesses at the scene and were told the same thing: Perryman was the aggressor and had injured Ismael. Given what they knew, the investigation was reasonable. Plaintiffs have not plead any facts from which one could plausibly conclude that the officers should have realized at the time that further inquiry was necessary before determining that there was probable cause to arrest Perryman for assault.

Because plaintiffs have not properly alleged a false arrest or unreasonable seizure claim against an individual officer, the City can have no liability as either the employer or the municipal decisionmaker.[6]

**B. EQUAL PROTECTION CLAUSE**

Plaintiffs allege that Perryman's arrest was the result of discriminatory policing in violation of the Equal Protection Clause. The only factual allegation in support of this claim is that Perryman, who is black, was arrested while the white security guard who attacked Taylor was not. An adverse impact on a racial or religious minority, while relevant, "is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Village of Arlington

---

[6] Under 42 U.S.C. § 1983, a local government entity cannot be held liable simply because its employee violated plaintiff's constitutional rights. Rather, a municipality such as the City of Seattle may be held liable for constitutional violations only when they occur as a result of the government's official "policy or custom." Monell v. New York City Dept. Soc. Servs., 436 U.S. 658, 694 (1978). This rule ensures that municipalities are liable only for "acts that are, properly speaking, acts of the municipality." Pembauer, 475 U.S. at 480 (internal quotation marks omitted). Although discrete decisions by a government official with ultimate authority on a matter may serve as "policymaking" by the government (Pembauer, 475 U.S. at 481), the acts of subordinate employees, such as the officers involved in this case, are generally insufficient to create municipal liability under § 1983 (Monell, 436 U.S. at 694). The constitutionally infirm acts of subordinate employees may, however, suggest the existence of a municipal policy or custom where there is evidence of "widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001) (internal quotation marks omitted).

Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977) (internal quotation marks and citation omitted). See also Lacey v. Maricopa County, 693 F.3d 896, 920 (9th Cir. 2012) ("To prevail on an equal protection claim under the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose.") (internal quotation marks omitted).

Plaintiffs' allege that "the Rhino security personnel, Justin Ismael and his friend Michael Davis deliberately and intentionally fabricated their story to have Sean arrested." Dkt. # 3-1 at 6. Taking the allegations of the complaint, the incident report, and the videos as true and construing them in the light most favorable to plaintiffs, the most that plaintiffs have alleged regarding the officers' motivation is that they were not suspicious enough of the story these individuals told. As discussed above, the officers conducted a reasonable investigation which gave rise to probable cause to believe that Perryman had assaulted Ismael. Whether the security guard should have been arrested as well does not affect the propriety of Perryman's arrest in these circumstances. Absent any allegation that could support a plausible claim of intentional racial discrimination on the part of the officers, plaintiffs' Equal Protection claim is deficient.

**C. STANDING**

Because plaintiffs have not alleged a plausible claim for relief, the Court need not determine whether Reverend Perryman has standing to pursue recovery for his monetary and emotional injuries.

**D. LEAVE TO AMEND**

Although all claims against the City of Seattle are hereby dismissed, this action continues as to defendants Rhino Room and Justin Ismael. In this context, leave to amend will not be blindly granted. If plaintiffs believe they can, consistent with their Rule 11 obligations, amend the complaint to remedy the pleading and legal deficiencies identified above, they may file a motion to amend (noted for consideration on the Court's calendar for the third Friday after filing

as specified in Local Civil Rule 7(d)(3)) and attach a proposed pleading for the Court's consideration (as specified in Local Civil Rule 15).

For all of the foregoing reasons, the City of Seattle's motion to dismiss is GRANTED. The claims against the municipal defendant(s) are DISMISSED.

Dated this 25th day of May, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge