UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                    )
WAYNE PERRYMAN, *et al.*,           )
                                    )   No. C17-0274RSL
            Plaintiffs,             )
    v.                              )
                                    )   ORDER DENYING PLAINTIFFS'
CITY OF SEATTLE POLICE, *et al.*,   )   SECOND MOTION FOR SUMMARY
                                    )   JUDGMENT
            Defendants.             )
_____ )

This matter comes before the Court on "Plaintiffs' Motion for Summary Judgment on Amended Complaint." Dkt. # 55. Plaintiffs allege that defendant Justin Ismael and security guards employed by defendant Rhino Room deliberately and intentionally framed plaintiff Sean Perryman for injuries Ismael suffered in a fight outside the Rhino Room on April 4, 2015. Plaintiffs assert causes of action described as "violations of 42 U.S. Code 1983 for defamation, deprivation of rights and privileges, violations of 42 U.S. Code 2000a for denial of equal access, and for Malicious Intent for making false statements that were not privileged for the sole purpose of having Sean C. Perryman arrested for a crime he did not commit." Dkt. # 46 at 1. In support of their request for summary judgment, plaintiffs cite to their previously-filed motion and exhibits.

In moving for summary judgment, plaintiffs rely on their previously-filed motion. In particular, plaintiffs cite to the certificate of probable cause signed by Detective Paul Suguro on

April 8, 2015, in order to prove that defendants Ismael and the security guards lied to the police officers who responded to the 911 call.[1] According to Detective Suguro, the events of April 4th included Ismael intervening when he saw plaintiff Perryman throw his friend, Matthew Taylor, to the ground and Ismael subsequently getting attacked by Perryman. Dkt. # 15 at 25.[2] There is no indication that Detective Suguro interviewed Ismael or the security guards before writing his report. Rather, he appears to have relied on the written reports from police officers at the scene.[3]

None of the reports reflects an indisputably false statement from Ismael to the officers. Ismael apparently told Officer Wade that Perryman assaulted him (Dkt. # 15 at 55) and told unidentified officers that Perryman had thrown him to the ground (Dkt. # 15 at 57). Given the security videos, it is at least arguable that Perryman tackled Ismael and injured his knee.[4] The security videos do not, however, support the contention that Perryman slammed Taylor into the ground. Nevertheless, one of the police reports on which Detective Suguro relied includes such a

---

[1] In reply, plaintiffs also spend a fair amount of time attempting to show that one of the security staff members involved in the incident, Timothy Heilman, lied to his attorney about his use of handcuffs on Perryman. The relevance of whether Heilman placed Perryman in handcuffs is unclear: it does not appear to have any bearing on plaintiffs' claims. To the extent plaintiffs are using the discrepancy to prove that Heilman is not credible, the declaration submitted to the Court does not refer to handcuffs or make any misrepresentation about the use of handcuffs.

[2] The Court assumes, for purposes of this motion, that plaintiffs would be able to authenticate the Seattle Police Department records submitted with the original motion for summary judgment.

[3] Detective Suguro did not request copies of the Rhino Room security videos until after he had signed the certificate of probable cause.

[4] Perryman has submitted a declaration stating that Ismael attacked Perryman and dislocated his knee when he tried to kick plaintiff. That, too, is a possibility. The videos show that there were at least two physical interactions between Ismael and Perryman, with the role of aggressor switching sides. In the context of this summary judgment motion, the evidence must be viewed in the light most favorable to defendants, the non-moving party.

ORDER DENYING PLAINTIFFS' SECOND
MOTION FOR SUMMARY JUDGMENT          -2-

statement from the manager of security for the Rhino Room, James Hargens. Dkt. # 15 at 57.[5] For purposes of this motion, the Court assumes (a) that the recorded statement is admissible to prove that a Rhino Room employee made the statement, (b) that the statement is false, and (c) that the statement contributed to the decision to arrest and/or charge Perryman.

Nevertheless, plaintiffs are not entitled to a summary determination of liability in their favor. Plaintiffs make no effort to identify the elements of the various claims they have asserted or to show that the facts of the case establish any of their claims as a matter of law. To prove a § 1983 claim, plaintiffs would have to show, among other things, that Hargens and/or the Rhino Room were state actors and that the witness statement was not privileged. Plaintiffs' defamation and malicious intent claims require a showing of intent that has not been made. And any misstatement of fact Hargens may have made to the police occurred long after Perryman was denied re-entry into the Rhino Room and therefore appears to be entirely unconnected to the public accommodation claim. Plaintiffs have not shown that they are entitled to a summary judgment of liability against Rhino Room or Ismael on any of their claims.

For all of the foregoing reasons, plaintiffs' second motion for summary judgment is DENIED.

Dated this 24th day of October, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[5] It is not entirely clear who wrote this report. The author declares himself to be the partner of Officer Wade on the night in question (that would be Officer Gallagher), but the report is digitally signed by Officer Wade.

ORDER DENYING PLAINTIFFS' SECOND
MOTION FOR SUMMARY JUDGMENT     -3-